STATE of Wisconsin, Plaintiff-Respondent,

v.

Fernando MORENO-ACOSTA, Defendant-Appellant.†

Court of Appeals

*No. 2013AP2173–CR. Submitted on briefs September 23, 2014.
—Decided November 19, 2014.*

2014 WI App 122

(Also reported in 857 N.W.2d 908.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Aneeq Ahmad* of *Aneeq Ahmad, Attorney at Law*, Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. NEUBAUER, P.J. Fernando Moreno-Acosta appeals his conviction for identity theft pursuant to WIS. STAT. § 943.201(2)(a) (2011–2012).[1] Moreno-Acosta argues that, under the statute, the State had to prove, as a separate element of the crime, that he knew that the personal identifying information he used belonged to an actual person. We conclude that the State does not have to prove this knowledge as a separate element of the offense and affirm.

## BACKGROUND

¶ 2. Moreno-Acosta, an undocumented immigrant worker, was accused of identity theft for using Kimberly Herriage's social security number to obtain employment at a McDonald's restaurant in Delavan, Wisconsin. At the jury trial, Herriage identified her social security number on a photocopy of a social security card that was in Moreno-Acosta's employment file. She testified that she did not know Moreno-Acosta and had never seen him before. She further stated that she had never given him permission to use her social security number. Rita Butke, the manager of the McDonald's where Moreno-Acosta worked, testified and identified that same social security number from the social security card Moreno-Acosta provided.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 3. Regarding the elements that the State must prove, the jury was given the following instructions:

Elements of the Crime That The State Must Prove

1. The defendant intentionally used personal identifying information of Kimberly Herriage.

 A social security number is "personal identifying information."

2. The defendant intentionally used personal identifying information of Kimberly Herriage to obtain money, employment or anything else of value or benefit.

3. The defendant acted without the authorization or consent of Kimberly Herriage and knew that Kimberly Herriage did not give authorization or consent.

4. The defendant intentionally represented that the information or document belonged to him.

 "Intentionally" requires that the defendant had the mental purpose to obtain money, employment or anything else of value or benefit by using personal identifying information of Kimberly Herriage without Kimberly Herriage's consent or authorization.

This is the standard jury instruction for WIS. STAT. § 943.201(2), modified to describe the charged offense as used to obtain employment and to include the victim's name. *See* WIS JI—CRIMINAL 1458.[2]

---

[2] Moreno-Acosta indicates that the comments to WIS JI—CRIMINAL 1458 state "that there are no uniform instructions for the offense." The comment to the standard jury instruction indicates that 2003 Wis. Act 36, which modified WIS. STAT. § 943.201, also created two new offenses, WIS. STAT. § 943.203, Unauthorized use of an entity's identifying information or

¶ 4. Moreno-Acosta's proposed jury instructions indicated the State had to prove that he knew the social security number belonged to an actual person. His proposed jury instructions added the following sentence to both elements 3 and 4 of the instructions above: "In order to establish this element, the State must prove that the defendant knew the personal identifying information belonged to Kimberly Herriage OR the State must prove that the defendant knew that the personal identifying information belonged to a real, actual person. *See* 18 U.S.C. § 1028A." (Emphasis omitted.) Moreno-Acosta's proposed instructions also added the following paragraph after the paragraph indicating what mental purpose "intentionally" requires:

Section 939.23(3) provides that when the word intentionally is used in a criminal statute, it requires "that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result. In addition, . . . the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word 'intentionally.' " Based on the latter requirement, the instruction includes the requirement that the defendant must know the victim did not consent to or authorize the use of the information or document. Therefore, the State must prove that the defendant knew that the personal identifying information belonged to a real, actual person. *See* 18 U.S.C. § 1028A.

documents, and Wis. Stat. § 946.79, False statements to financial institutions. It is immediately after noting these two new statutes that the comment indicates, in a bracketed statement, "There are no uniform instructions for these offenses." This statement refers to the two new statutes, not § 943.201. Wisconsin JI—Criminal 1458 is the uniform instruction for § 943.201(2).

(Emphasis omitted.) The trial judge refused Moreno-Acosta's proposed instruction, indicating, "I don't believe that 1458 needs any further supplementation." The jury convicted Moreno-Acosta of identity theft, and he appeals.

## DISCUSSION

¶ 5. The statute at issue here is WIS. STAT. § 943.201(2), which provides as follows:

(2) Whoever, for any of the following purposes, intentionally uses, attempts to use, or possesses with intent to use any personal identifying information or personal identification document of an individual, including a deceased individual, without the authorization or consent of the individual and by representing that he or she is the individual, that he or she is acting with the authorization or consent of the individual, or that the information or document belongs to him or her is guilty of a Class H felony:

(a) To obtain credit, money, goods, services, employment, or any other thing of value or benefit.

(b) To avoid civil or criminal process or penalty.

(c) To harm the reputation, property, person, or estate of the individual.

WISCONSIN STAT. § 939.23(3) defines "intentionally":

"Intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result. In addition, . . . the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word "intentionally".

238

¶ 6. Moreno-Acosta argues that the word "intentionally" in WIS. STAT. § 943.201(2) applies to the phrase "personal identifying information . . . of an individual," such that the defendant must know that there is an actual victim. Moreno-Acosta points to footnote 7 of WIS JI—CRIMINAL 1458, which states that "the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word 'intentionally.' " WIS JI—CRIMINAL 1458, n.7. Moreno-Acosta also relies on the WIS. STAT. § 939.23(3) definition of "intentionally," set forth above. Finally, Moreno-Acosta relies on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), which interpreted a federal aggravated identity theft statute as requiring that the defendant knowingly use personal identifying information of another person to require that the defendant knew that the means of identification belonged to an actual person.

¶ 7. The State responds that the jury instructions adequately expressed "the knowledge aspect of intent set forth in WIS. STAT. § 939.23(3)." According to the State, "The law does not require that in addition, Moreno-Acosta knew that the social security number he used belonged to an actual, real person." The State argues that "intentionally" is an adverb, which modifies the verbs in the statute but "not all of the later language in the statute." The State further argues that to require proof that the defendant knew the information belonged to an actual person would conflict with the purpose of the statute, which is to protect individuals who are victimized by the nonconsensual use of their personal identifying information. Finally, the State cites *State v. Ramirez*, 2001 WI App 158, 246 Wis. 2d 802, 633 N.W.2d 656, in which this court interpreted

WIS. STAT. § 943.201(2) (1999–2000)[3] to have four elements, none of which is that the defendant know that the information used belonged to an actual person.

*Standard of Review*

¶ 8. The question presented is one of statutory interpretation, which is a question of law we review de novo. *State v. Peters*, 2003 WI 88, ¶ 13, 263 Wis. 2d 475, 665 N.W.2d 171. The goal in statutory interpretation is to give the statute the meaning the legislature intended. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language is given its common, ordinary meaning and "is interpreted in the context in which it is used; not in isolation but as part of a whole." *Id.*, ¶¶ 45–46.

*WISCONSIN STAT. § 943.201*

¶ 9. We do not write on a blank slate with regard to determining the elements the State must prove. Although in response to a different question, the *Ramirez* court determined the elements of WIS. STAT. § 943.201:

> This crime has four elements: (1) the defendant's intentional use of the personal identifying information or document; (2) the defendant's use of such information to obtain credit, money, goods, services, or any-

---

[3] The current version of the statute differs from the 1999–2000 version, but not in any way relevant to this case. WISCONSIN STAT. § 943.201(2) was amended in 2003 to enumerate the prohibited uses of the personal identifying information. *See* 2003 Wis. Act 36, § 22.

thing else of value; (3) the defendant's use of such information without the authorization or consent of the other person; and (4) the defendant's intentional representation that he or she was the other person or acted with such person's authorization or consent.

*Ramirez*, 246 Wis. 2d 802, ¶ 10 (citing WIS JI—CRIMINAL 1458); *see also State v. Baron*, 2008 WI App 90, ¶ 9, 312 Wis. 2d 789, 754 N.W.2d 175 (listing elements for identity theft with the purpose of harming a person's reputation). Neither *Ramirez* nor WIS JI—CRIMINAL 1458 requires a separate element asking if Moreno-Acosta knew that he was stealing the social security number of an actual person.

██

¶ 10. The only issue here is what part or parts of the statute are modified by the requirement that the defendant act "intentionally." While Moreno-Acosta zeroes in on the phrase "of an individual" as a purported object of "intentionally," we look at the structure of the statute in which the operative language appears— as part of the statute as a whole. *Kalal*, 271 Wis. 2d 633, ¶ 46. In the first line of the statute, the legislature's use of the phrase "for any of the following purposes" focuses the entire statute on the mental purpose to accomplish the enumerated objectives under WIS. STAT. § 943.201(2)(a)-(c), i.e., to obtain something of value or benefit, etc. The conduct criminalized under § 943.201(2), in this case, is the purposeful use of personal identifying information to obtain employment.[4] The conduct is only criminalized under this

---

[4] This case is about using the personal identifying information to obtain employment, so we focus on that part of the statute, although our analysis of "intentionally" is applicable to the other enumerated objectives listed in the statute. Additionally, because the defendant does not dispute that he did use the

statute if the defendant did in fact use the personal identifying information of an individual, so the State must prove that fact, but the intentional use goes to the purpose to obtain one or more of the enumerated objectives, such as employment.

¶ 11. WISCONSIN STAT. § 939.23(3), defining "intentionally," reinforces this focus on the actor's purpose. Section 939.23(3) states that "intentionally" can mean that the actor "has a purpose to do the thing." The jury instructions for that statute, WIS JI—CRIMINAL 923A, confirm that there is a meaningful distinction between the active "purpose" and the passive "knowledge." *See* WIS JI—CRIMINAL 923A. Alternate jury instructions for the same statute indicate that "[a]cting *either* with 'mental purpose' *or* 'knowingly' is sufficient for liability for most offenses." WIS JI—CRIMINAL 923B, n.1 (emphasis added). The jury instruction committee recognized that there are two separate ways to fulfill an intent requirement: purpose or knowledge. The jury instruction committee's conclusions may be given weight. *See State v. Danforth*, 129 Wis. 2d 187, 201, 385 N.W.2d 125 (1986).

¶ 12. The standard jury instruction for identity theft, used here, provides that the intent requirement is one of purpose rather than knowledge. The jury was instructed: " 'Intentionally' requires that the defendant had the mental purpose to obtain money, employment or anything else of value or benefit by using personal identifying information of Kimberly Herriage without Kimberly Herriage's consent or authorization." *See* WIS JI—CRIMINAL 1458 n.9 ("[T]he 'mental purpose'

social security number of the victim or that the information was used to obtain employment, we do not address the variations on these parts of the identity theft statute either.

alternative for intent is most likely to apply to this offense."). Consistent with the statutory language, the jury instruction makes clear that "intentionally" here goes to the mental purpose to use the personal identifying information to obtain employment, not to the knowledge that the personal identifying information belongs to another person. The requirement that the actor have knowledge of those facts necessary to make the conduct criminal is satisfied by the standard instruction, which requires proof that the defendant knew the victim did not consent. *See id.* at n.7.

¶ 13. The statute's focus on mental purpose, rather than knowledge, distinguishes it from the aggravated identity theft statute at issue in *Flores-Figueroa*, relied upon by Moreno-Acosta. That federal statute provides for an aggravated penalty if, during certain felony violations, the defendant knowingly uses the personal identifying information of another person. *See* 18 U.S.C. § 1028A(a)(1) (2006).[5] As the Wisconsin jury instructions counsel, "knowingly" is not the same as "intentionally." "To know" means "to be cognizant or aware, as of some fact, circumstance, or occurrence; have information, as about something." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1064 (2d ed. 1987). "Intention" means the "act or instance of determining mentally upon some action or result," "purpose or attitude toward the effect of one's actions or conduct."

[5] Moreno-Acosta also relies on *People v. Hernandez*, 967 N.E.2d 910 (Ill. App. Ct. 2012), which interpreted an Illinois identity theft statute that also used "knowingly" for the mental state. *See id.,* ¶ 29 (citing 720 ILL. COMP. STAT. ANN. 5/16G-15(a)(1) (West 2008)). This statute has since been repealed. *See* P.A. 97–597, § 6, eff. Jan. 1, 2012, *available at* www.ilga.gov/legislation/pulicacts/97/PDF/097–0597.pdf.

*Id.* at 991. Intention implies purposeful action, while knowledge suggests only awareness. The federal statute in *Flores-Figueroa*, by using the word "knowingly," requires that the actor know all facts following that adverb, including that the information belongs to an actual person. Significantly, the statute criminalizes the knowing use of that information *without any reference to any prohibited purposes*. The Wisconsin statute thus has different wording and an entirely different structure, focusing on the actor's intent to purposefully use the personal identifying information to obtain employment; "intentionally" modifies "uses," the core action in the statute, and the purpose, "to obtain employment," not that the personal identifying information belonged to a person. If the legislature had wanted the statute to mean what Moreno-Acosta says it means, the legislature could have said that the actor intentionally uses personal identifying information known to belong to an actual person, or language to that effect. It did not. *See also State v. Garcia*, 788 N.W.2d 1, *2–3 & n.2 (Iowa Ct. App. 2010) (under Iowa statute that criminalizes fraudulent use of identification information of another, State has to establish that information was of another person and that it was used fraudulently; "A 'fraudulent' use requires Garcia know his use was illegitimate, but does not require him to know the identification was of another person.").

¶ 14. The legislative history of WIS. STAT. § 943.201 supports our conclusion. The drafting file includes an article from the Los Angeles Times discussing proposed identity theft legislation in California. *Ramirez*, 246 Wis. 2d 802, ¶ 15. The article "speaks of the ongoing harm inflicted on victims of identity theft," *id.*, and the societal cost of the crime. The individual whose personal identifying information was used for a

prohibited purpose was victimized whether the defendant knew of his or her actual existence or not. This supports the conclusion that the statute must be applied to criminalize the theft of personal identifying information when that information belongs to an actual person. *See Kalal*, 271 Wis. 2d 633, ¶ 51 (legislative history can be consulted to confirm the plain meaning of a statute).

¶ 15. In sum, to prove identity theft, the State had to establish that the defendant had the mental purpose to obtain employment or anything else of value or benefit by using personal identifying information of the victim without her consent or authorization. Thus, while the State must prove that the information used did in fact belong to an individual, it need not prove that the defendant knew that the information was of another actual person. We affirm Moreno-Acosta's conviction.

*By the Court.*—Judgment affirmed.